GARCÍA, PLAINTIFF AND APPELLANT, *v.* AGUAYO ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action for Annulment, Etc.

No. 2403.—Decided July 29, 1921.

NEW TRIAL—JUDGMENT.—When the Supreme Court remands a case to an inferior court for a new trial the case is again open as if there had been no trial, and a judgment entered without a new trial is null and void.

ID.—RES JUDICATA.—The trial court not having weighed the evidence for the reason that its judgment was based on the plea of *res judicata* and this plea having been held insufficient by the Supreme Court, it may remand the case for a new trial.

The facts are stated in the opinion.

*Mr. L. Muñoz Morales* for the appellant.

*Messrs. J. Tous Soto* and *D. Monserrat, Jr.,* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

Sometime before the year 1899 Juan García y Villarraza arrived in the city of Ponce from Cuba with two children whom he held out to be his legitimate children by reason of his marriage with Manuela Fernández. It was understood at the time that he was a widower by reason of the death of the said Manuela Fernández. It was an unquestioned fact, however, that one of these children, a son, was born while Juan García had a former wife living, so that the said son was not legitimate. Be this as it may, Juan García Villarraza married Josefa Aguayo in Ponce and in the marriage certificate represented himself to be the widower of Manuela Fernández. The two children were held out, as we have said, as his legitimate children and were so treated by everybody until the death of Juan García on the 27th of April, 1899. Thereafter information came to Josefa Aguayo which led her to suspect or believe that these two said children were not the legitimate children of the said Juan García and thereupon, with her child, accordingly she filed a suit to have herself and her own legitimate child declared the sole heirs of Juan García, making the children first mentioned, to whom we have referred, defendants in that suit. Their alleged names were Rodolfo Manuel Abraham García y Fernández and Elvira Juana Manuela Joaquina García y Fernández. The District Court of Ponce, where the suit was brought, decided in favor of the legitimacy of Elvira García. This judgment was appealed to the Supreme Court of Porto Rico and was reversed, the opinion saying as follows:

"For the reasons stated, we hold that the judge erred in rejecting evidence which he should have admitted and that the evidence adduced is insufficient to justify the judgment rendered, and, consequently, that the order denying a new trial should be set aside, and that said judgment should accordingly be reversed with the costs of the action and of the appeal against the defendant and respondent." *Aguayo et al.* v. *García*, 11 P. R. R. 263.

The judgment of this court sent the case back for a new trial, or other purposes not inconsistent with the opinion. After the case was sent back to Ponce nothing was done immediately, but after a while the complainants came into court and told the court that they renounced all right to a new trial and asked the court to render judgment in their favor. This application or motion was opposed by Elvira García, but the court nevertheless entertained it and on the 25th day of April rendered the following judgment:

"Under the present condition of the record it seems to the court difficult to establish the affirmative rights of the defendant, if she really has any rights in the estate of her reputed father. The court sustains the complaint, with costs against the defendant, but reserves to the said defendant the right to recur to any court of jurisdiction and assert her rights, if any she have."

Thereafter, or in November, 1918, Elvira García filed the present complaint, which is entitled "Cancellation and other purposes" but which has for its purpose the establishment of the marriage of her parents and her rights to the estate of Juan García y Villarraza.

Among other things the defendant alleged the defense of *res adjudicata* and after a trial in which both sides presented proof the court rendered judgment in favor of the defendants on the sole ground of *res adjudicata*.

A good deal of the argument on appeal was directed to the question of whether the reservation of rights to Elvira García prevented the judgment from becoming *res adjudicata*. We have not attempted to study the authorities in this regard with great care, or whether this reservation was or was not a nullity. But we think the judgment was. The effect of the judgment of this court was to send the case back for a new trial in which both parties should be heard. It was a complete opening of the case and left the former judgment in favor of the defendants as if none had been rendered. The judgment in the court below being in favor of the defendants,

this court, in reversing, rendered no judgment in favor of the complainant and made no intimation of the sort in its opinion or judgment, so that when the case went back to the District Court of Ponce it was as if no trial had ever been had so far as the power of the court to render judgment was concerned. In order, therefore, so to render a judgment, a trial was indispensably necessary. Naturally, the complainants in the former suit would have liked to obtain a judgment without a trial, but the burden was on them still to make out a case and give the defendant Elvira García another opportunity to defend. This opportunity to defend was never had. She was merely heard on a motion to render judgment after the complainants in their own interests renounced their right to a new trial. The judgment being rendered without giving defendant Elvira García her day in court to be heard and present her case, it was an absolute nullity.

The appellee in this court begins the brief by attempting to show that Elvira García, the complainant, never properly made out a case, and particularly never proved the marriage of her parents. At the trial complainant Elvira García offered a document tending to prove the marriage of her parents. This document was objected to. The court, however, admitted the writing as an authentic document, "to give it, of course, the value and effect which it would have as evidence." This was a certificate of marriage and is as follows:

"Republic of Cuba.—Rev. Luciano García y González, Priest *pro-tempore* of the Parish of San José de Guira de Melena, Province and Diocese of Havana.—I certify that the following marginal entry No. 113 D appears at pages 136–137 of the Auxiliary Register of Marriages No. 1, to wit: 'Juan García Villaraza to Manuela Fernández y Rodríguez. The former is a widower and the latter a spinster, both being white.'—On the face of the page it is stated: 'On November 29, 1883, Rev. Rafael Asunción Toymil y Zapela, the

then Curate of this Church of San José de Guira de Melena, Province and Diocese of Havana; the banns of marriage prescribed by the Sacred Council of Trent having been thrice proclaimed in this Church and twenty-four hours having elapsed since the last proclamation without any canonical or civil impediment having been shown; having ascertained that the contracting parties do not require the consent of their parents and having examined the parties as to the Christian doctrine and complied with all other requirements, officiated at the marriage consecrated by mutual vows and according to the requirements of the Holy Mother Church between Juan García y Villaraza, a native of Málaga, Spain, 31 years of age, legitimate son of Antonio García, a native of Rambla, and María Villaraza a native of Zaragosa, surviving spouse of Carmen Beltrán and by profession a dental surgeon, and Manuela Fernández Perdigón, spinster born in Havana and a resident of this parish, 34 years of age, of domestic occupations, legitimate daughter of Manuel Fernández Loreze, a native of Asturias, Spain, and of Dominga Perdigón, a native of Havana.—The godparents were Manuel Fernández Loreze and Juana Fernández Perdigón and the witnesses Antonio Toymil, a native of Regla, Havana, and by profession a public-school teacher, and Esteban Hernández, a landowner, both being residents of this district and married.—And conformably to a decree of the Right Reverend Bishop of the Diocese dated June 23, 1896, the archives of this church having been destroyed by fire on January 5, of the present year of 1896, I, the Rev. Luciano García y González, Acting Priest of the Parish, affix my signature this second day of October, 1918.—Luciano García, Priest, rubric.'—The above agrees with its original.—Guira de Melena this third day of October, 1918.—(Sd.) Luciano García, Priest.

"Rev. Alberto Méndez y Núñez, Catholic Priest, Doctor of the Faculty of Holy Theology, Archdeacon of the Holy Cathedral, Secretary of the Chamber and Administration of the Bishopric of Havana; certifies: that the signature and rubric above affixed are apparently the same as those used by the Rev. Luciano García, Acting Parish Priest of the Church of Guira de Melena of this Province, in his writings.—And in witness thereof I sign this document in Havana this fourth day of October, 1918.—(Sd.) Dr. Alberto Méndez.—Archdeacon and Secretary.

"Consulate General of the United States of America at Havana, Republic of Cuba.—I, the undersigned, Joseph A. Springer, Vice-

Consul of the United States of America at Havana, Republic of
Cuba, do hereby certify that the signature to the foregoing and
annexed document, to which is also affixed the seal of the Secretary's
office of the Bishopric of Havana is known to me to be the true and
genuine signature of Rev. Doct. Alberto Méndez, Archdeacon of the
cathedral, Secretary of Chamber and Government of the Bishopric
of Havana, who certifies to the signature to the certificate of Parish
Priest of Guira de Melena and as such, to all his official acts full
faith and credit are due and giving as well in court as thereout.—
In testimony whereof I have hereunto set my hand and affixed the
seal of this Consulate General at Havana, Republic of Cuba, this
fourth day of October, 1918.—(Sd.) Joseph A. Springer, Consul of
United States of America at Havana, Republic of Cuba.—Fee No.
6199, cancelled.''

Whether this document was competent proof of the mar-
riage of the parents of Elvira García is a matter on which
this court has not a definite opinion. The document was ad-
mitted in evidence by the court for what it was worth, but
as we have seen, when it came to the moment of judgment
the court did not pass upon the effect of this document, but
the said judgment was rendered exclusively on the defense
of *res adjudicata.* Perhaps on this appeal, as the burden
was on the complainant to make out a case, we have a right
to review the competency of this document to prove the mar-
riage of the complainant's parents, or, in other words, to
say whether there was any evidence in the record to show
the marriage of the complainant's parents. But as it was
a matter never passed upon by the court below, we prefer
to exercise our discretion to send the case back for a new
trial in which the parties may be heard squarely on the ques-
tion of whether Elvira García is or is not the legitimate
daughter of Juan García y Villarraza.

At the first trial the judgment was rendered in favor of
Elvira García. This judgment was reversed and the de-
fendant Elvira García not given another opportunity when
the case reached Ponce to prove her said legitimacy. In the

second real trial, resulting in the judgment from which this appeal was taken, the question of the marriage *vel non* of Juan García and Manuela Fernández was never passed upon by the court below. This was a case where a young woman was held out to the world for a number of years as being the legitimate child of Juan García and so treated by her own stepmother until the time of the death of the said Juan García. While some of the proof of legitimacy was perhaps not available in any sense, we are not satisfied that the document offered in evidence, which we have copied, may not be *prima facie* valid tending to prove the marriage, coming as it does from the proper source in Cuba, namely, the parochial record. It is true that it appears on the face of the writing that it was a reconstructed document, the original having disappeared, and the arguments of the appellees as to its incompetency to prove the marriage are not without force.

We are convinced, however, that this complainant should have another and full trial in which the court below, after hearing the parties, will enter fully into the question, not only of the validity of the marriage certificate, but also, under the special and peculiar circumstances of this case, give the complainant, if it is possible, an opportunity to prove the marriage of her parents *aliunde.* We are not so sure that there may not be other evidence of reputation and the like which may tend to supplement the alleged marriage certificate, if it be in fact defective. We do not intend to limit the parties or the court in any way in the discussion of the competency of the alleged certificate, but as this is not a mere question of property, but is a question of a child's proving her legitimacy, recognized until the death of her father, we feel that every discretionary power of the court ought to be exercised to give her a full opportunity to be heard on that question and its consequences.

The judgment should be reversed and the case sent back for a new trial.

*Reversed and remanded.*

Justices Del Toro, Aldrey and Hutchison concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.